ROBERT J. PARKS, ESQ. (SBN 103014)
robert.parks@bipc.com
ROBERT K. EDMUNDS, ESQ. (SBN 89477)
robert.edmunds@bipc.com
BUCHANAN INGERSOLL & ROONEY LLP
600 West Broadway, Suite 1100
San Diego, CA  92101
Telephone:   619 239 8700
Fax:            619 702 3898

Attorneys for Plaintiff Stemage Skin Care, LLC

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| STEMAGE SKIN CARE, LLC, a North Carolina limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>NUGENE INTERNATIONAL, INC., a Nevada corporation; NUGENE, INC., a California corporation;  MOHAMMAD ALI KHARAZMI, an individual; MOHAMMED SAEED KHARAZMI, an individual; KATHY IRELAND WORLDWIDE, a California corporation; STEPHEN ROSEBERRY, an individual; STEVE ROSENBLUM, an individual; ERIK STERLING, an individual; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.<br><br>COMPLAINT FOR:<br><br>(1) COPYRIGHT INFRINGEMENT;<br>(2) INTERFERENCE WITH CONTRACT;<br>(3) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;<br>(4) NEGLIGENT INTERFERENCE WITH PROSPECTIVE ENCONOMIC ADVANTAGE; AND<br>(5) CONSPIRACY<br><br>**DEMAND FOR A JURY TRIAL** |

COMPLAINT

## COMPLAINT

This is an action by Stemage Skin Care, LLC ("Plaintiff") for damages and injunctive relief arising from infringement of Plaintiff's copyright in an audio-visual work of authorship.  Plaintiff also seeks damages for interference with contract, intentional interference with prospective economic advantage; negligent interference with prospective economic advantage; and conspiracy.  In support of this Complaint, Plaintiff alleges as follows.

## THE PARTIES

1.    Plaintiff is a North Carolina limited liability company and maintains a place for the transaction of business at 520 Elliot Street, Charlotte, North Carolina 28202-1366.

2.    Plaintiff is informed and believes and thereon alleges that Defendant NuGene International, Inc. ("NuGene International") is a publicly traded Nevada corporation, with addresses at 1645 Village Center Circle, Suite 170, Las Vegas, Nevada 89134, and 1184 Virginia St., Far Rockaway, New York 11619.  On information and belief, Defendant NuGene International, during periods of time relevant to this Complaint, has authorized, directed, and participated substantially in the unlawful conduct alleged hereunder, and has acted as the alter ego of Defendant NuGene for all material purposes.

3.    Plaintiff is informed and believes and thereon alleges that Defendant NuGene, Inc. ("NuGene") is a California corporation, with an address at 17912 Cowan, Irvine, California 92614, and that NuGene is a wholly owned subsidiary of NuGene International.

4.    Plaintiff is informed and believes and thereon alleges that Defendant Mohammad Ali Kharazmi ("MA Kharazmi") is a California resident located and doing business at 17912 Cowan, Irvine, California 92614.  On information and belief, Defendant MA Kharazmi is a principal officer, director and/or shareholder of Defendants NuGene International and/or NuGene and, during periods of time

relevant to this Complaint, has authorized, directed, participated substantially in the unlawful acts alleged hereunder.

5.      Plaintiff is informed and believes and thereon alleges that Defendant Mohammad Saeed Kharazmi ("MS Kharazmi") is a California resident located and doing business at 17912 Cowan, Irvine, California 92614.  On information and belief, Defendant MS Kharazmi is a principal officer, director and/or shareholder of Defendants NuGene International and/or NuGene and, during periods of time relevant to this Complaint, has authorized, directed, participated substantially in the unlawful acts alleged hereunder.

6.      Plaintiff is informed and believes and thereon alleges that Defendant Kathy Ireland Worldwide ("Kathy Ireland Worldwide") is a California corporation, with an address at P.O. Box 1410, Rancho Mirage, California 92270.

7.      Plaintiff is informed and believes and thereon alleges that Defendant Stephen Roseberry ("Roseberry") is a California resident located and doing business at 2029 Century Park East, 14th Floor, Los Angeles, California 90067.  On information and belief, Defendant Roseberry is a principal officer, director and/or shareholder of Defendant Kathy Ireland Worldwide and, during periods of time relevant to this Complaint, has authorized, directed, participated substantially in the unlawful acts alleged hereunder.

8.      Plaintiff is informed and believes and thereon alleges that Defendant Steve Rosenblum ("Rosenblum") is a California resident located and doing business at 2029 Century Park East, 14th Floor, Los Angeles, California 90067.  On information and belief, Defendant Rosenblum is a principal officer, director and/or shareholder of Defendant Kathy Ireland Worldwide and, during periods of time relevant to this Complaint, has authorized, directed, participated substantially in the unlawful acts alleged hereunder.

9.      Plaintiff is informed and believes and thereon alleges that Defendant Erik Sterling ("Sterling") is a California resident located and doing business at 2029

Century Park East, 14th Floor, Los Angeles, California 90067.  On information and belief, Defendant Sterling is a principal officer, director and/or shareholder of Defendant Kathy Ireland Worldwide and, during periods of time relevant to this Complaint, has authorized, directed, participated substantially in the unlawful acts alleged hereunder.

10.    Plaintiff lacks knowledge or information as to the true names and capacities of defendants sued herein as Does 1 through 50, inclusive, and therefore sues these defendants by such fictitious names.  Plaintiff is informed and believes and thereon alleges that each of Does 1 through 50, inclusive, is liable for the obligations and claims alleged herein.  Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction over Plaintiff's copyright infringement claim pursuant to 17 U.S.C. § 501 and 28 U.S.C. §§ 1331 and 1338(a).

12.    This Court has supplemental jurisdiction over Plaintiff's claims arising under the laws of the State of California pursuant to 28 U.S.C. § 1367(a) because these claims are so related to Plaintiff's claims under federal law that they form part of the same case or controversy and derive from a common nucleus of operative fact.

13.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and § 1400(a) because (a) the facts of infringement and other wrongful conduct alleged in this Complaint occurred in the Central District of California: (b) the Defendants are doing business and may be found in the Central District of California; and (c) Defendants have a sufficient connection with the Central District of California to make venue proper in this District, all as alleged in this Complaint.

## GENERAL ALLEGATIONS

### Ireland's Ambassador Agreement with Plaintiff

14.    At all relevant times, Plaintiff is, and has been, in the business of developing and commercializing certain skin care products, based on supplements

COMPLAINT

derived from human adult stem cells called Human Mesenchymal Stem Cells (the "Products").

15.   In or about August, 2012, Plaintiff retained the services of Kathy Ireland ("Ireland"), to provide certain so-called "Ambassador Services" promoting the Products.  At the time, *Forbes Magazine* had recognized Ireland, a super model swimsuit icon, as having built a licensing empire by making herself, her name, and her likeness available to others for the promotion of their products.  A true and correct copy of the article in the February 27, 2012 edition of *Forbes* is attached hereto as <u>Exhibit A</u> and incorporated herein by this reference.

16.   On or about August 20, 2012, Ireland's company, kathy ireland, inc. ("KII"), and Plaintiff entered into that certain Commercial Ambassador Agreement (the "Ambassador Agreement") dated August 20, 2012, pursuant to which KII made Ireland available to perform the Ambassador Services.  Ireland signed the Ambassador Agreement on KII's behalf, and she signed a personal guaranty of KII's obligations under the Ambassador Agreement.  For the purposes of this complaint, Ireland and KII are referred to collectively and/or interchangeably as "Ireland."  A true and correct copy of the Ambassador Agreement with Ireland's guaranty is attached hereto as <u>Exhibit B</u> and is incorporated herein by this reference.

17.   The Ambassador Agreement contained, among others, the following material provisions:

(a)   Pursuant to Section 1(d), the initial term was to end on December 31, 2017.

(b)   Pursuant to Section 5(a), Plaintiff agreed to pay (and paid) Ireland an "Ambassador Fee" of $100,000.00.  The fee was for appearing on the "Show," defined as "a one half-hour television direct response program, which demonstrates, promotes and sells a line of skin care products presently known as Stemage."

(c)   Pursuant to Section 2(f), Plaintiff agreed to pay all of the production costs for the Show.

(d)     Pursuant to Section 2(j), Ireland agreed that Plaintiff would own all of the rights related to the Show and that Plaintiff agreed to give Ireland a royalty-free license in perpetuity to use any excerpts from the Show solely for Ireland's own promotional and marketing purposes.

(e)     In addition to the Show, Ireland agreed, pursuant to Section 2(b)(i), to make herself "available, subject to her personal schedule, to support ongoing promotional activities including but not limited to:  speaking engagements, TV and media appearances, and online social media venues such as web blogs, Twitter, Facebook and related vehicles."  Plaintiff agreed to pay the expenses for travel and hotels that Ireland incurred in connection with these additional services.

(f)     Plaintiff agreed that "[p]rior to use, all marketing materials, advertisements, packaging, on-line content, images, and the like to be used [by Plaintiff] with the Products shall be submitted to [Ireland] for review and approval.  If [Ireland] has not approved or rejected such materials with five (5) business days of [Plaintiff's] submission, then any such material shall be deemed approved by [Ireland]."

(g)     Plaintiff agreed that Ireland could represent "other cosmetic products so long as those products are not Competing Products."  The Ambassador Agreement defined "Competing Products as "any stem cell based skin care products."

(h)     Ireland agreed that without Plaintiff's prior written consent, she "will not engage in or be involved with endorsing, sponsoring, promoting, manufacturing, advertising, marketing or distributing any Competing Products for a period commencing on the date of this Agreement and ending at the time that this Agreement expires or is otherwise terminated as set forth herein except for termination pursuant to Section 7(c) hereof in which event this Section 3 shall survive until the natural expiration of this Agreement."

(i)     Ireland agreed that her services under the Ambassador Agreement were "of special and extraordinary character, which gives them unique value," and the loss

of those services "could not be adequately compensated for by damages; a breach of any provision hereof would cause [Plaintiff] irreparable harm" where Plaintiff would be "entitled to injunctive or other equitable relief."  Further, if Ireland "indicates she does not intend to perform, it shall be deemed a breach of this Agreement and [Plaintiff's] remedies hereunder shall be cumulative."

18.   From 2012 to approximately October 2014, Plaintiff and Ireland worked together to produce the Show and other direct response infomercial, and to present the Products to the market in other venues, such as news programs, television shows, public appearances, and the like.

19.   The Show first aired and was published publicly on or about April 29, 2013.

20.   In or about May 2013, Ireland's role on behalf of Plaintiff's Products was announced publicly in press releases.  One press release read, in part, as follows:

> LOS ANGELES, May 22, 2013/PRNewswire/ -- **Kathy Ireland**, CEO and Chief Designer of kathy ireland Worldwide (kiWW) and leading women's health advocate, and world-renowned board certified surgeon **Dr. David Scharp** today announced their collaboration in bringing to the beauty market a stem cell-derived product brand named **Stemage.**  They note that the unique aspect of the natural skin rejuvenation system is that it targets visible signs of aging through the unique and proprietary use of human Mesenchymal stem cell derivatives, not stem cells but rather active ingredients or derivatives of which stem cells are comprised.
>
> It is a first venture into the science of stem cells for Kathy, whose kiWW is the 25th most powerful brand name worldwide on *Licensing Global Magazine*'s top 125 brands list.  Ireland's firm designs and markets more than 15,000 individual products throughout the world.
>
> "Skin care is one of my passions.  My work and my life were impacted by troubled skin.  Stemage is new, powerful and extraordinary.  Expect to feel and see something different.  Our relationship with the researchers and executive team at Stemage is responsible for a strategic alliance, between our two companies.

- 6 -
COMPLAINT

> Stem cells are the next phase of health and personal care.  My skin feels healthier, trouble free and finally, I'm able to wear less makeup. I love Stemage.  I believe you will too," says Kathy Ireland, CEO and Chief Designer of kathy ireland Worldwide.

The contents of this press release were published, and may still be found, on several beauty-related and cosmetics-related websites.  A true and correct of the press release is attached hereto as Exhibit C and is incorporated herein by this reference.

21.    On or about May 31, 2013, Ireland's launch with Plaintiff was published in an article in *License! Global Magazine*.  A true and correct copy of the article is attached hereto as Exhibit D and is incorporated herein by this reference.

22.    Ireland also participated in several programs, such as infomercials and one appearance on Marie (i.e., Marie Osmond's television show), in which Ireland appeared and promoted Plaintiff's Products.  The most recent of the programs located appears to have aired in March, 2014.

23.    In early 2014, Plaintiff and Ireland mutually decided to consider different ways of bringing the Products to the market, including, without limitation, a rebranding of the Products.

24.    By March 2014, Plaintiff had developed a new marketing strategy for the Products.  As required under Section 3(d) of the Ambassador Agreement, Plaintiff submitted the new strategy to Ireland for her review and approval.  Section 3(d) of the Ambassador Agreement provided that  Ireland had five (5) business days following Plaintiff's submittal of its new marketing strategy to reject or otherwise disapprove it, and that if Ireland did not approve or reject Plaintiff's submittal within those five (5) business days, Ireland would be deemed to have approved Plaintiff's submittal. Ireland did not approve or reject Plaintiff's submittal of its new marketing strategy within the five (5) business day period, and was therefore deemed to have approved Plaintiff's new marketing strategy.

25.    On or about May 8, 2014, Ireland participated with Plaintiff in the development of a new direct response video to be played on television for

promotional purposes.  On or about May 20, 2014, Ireland approved the video.

26.    On or about June 9, 2014, Ireland emailed Plaintiff to ask Plaintiff to participate in a "multi-partner Design and Retail Synergies" conference telephone call.  Plaintiff participated in the conference call.

27.    On or about July 19, 2014, Ireland sent Plaintiff an email, requesting Plaintiff's new marketing plans.  On or about July 21, 2014, Plaintiff replied to Ireland's email by submitting the details of its marketing plan including a rebranding plan.  Plaintiff indicated in its reply that it hoped to launch the new marketing strategy by August 1, 2014.  Ireland did not approve or reject the new marketing materials, including, without limitation, the rebranding plan, within the five (5) business days following Plaintiff's submission to Ireland.  Under Section 3(d) of the Ambassador Agreement, Ireland was deemed to have approved Plaintiff's marketing plan.

28.    On or about August 14, 2014, Ireland sent Plaintiff an email, requesting samples of the marketing materials to be mailed to Ireland at an address in Rancho Mirage, California.  Plaintiff sent the samples as requested.  Ireland did not approve or reject the samples within the five (5) business days following Plaintiff's submission to Ireland.  Under Section 3(d) of the Ambassador Agreement, Ireland was deemed to have approved Plaintiff's samples.

29.    On or about August 15, 2014, Ireland invited Plaintiff to participate in another "Retail Task Force" conference call.  On or about August 20, 2014, Ireland sent an email to Plaintiff, thanking it for its participation in the Retail Task Force conference call.

30.    As of October 1, 2014, Plaintiff had performed all of its obligations under the Ambassador Agreement, except those that Ireland had excused or waived.

31.    On or about October 1, 2014, Ireland informed Plaintiff that she had decided to cease performing services for Plaintiff under the Ambassador Agreement. Ireland attempted to justify her decision by, among other things, knowingly,

COMPLAINT

intentionally, falsely, and fraudulently claiming that she had good cause to terminate the Ambassador Agreement because Plaintiff had breached the Ambassador Agreement by, among other things, changing its marketing strategy for its Products without first obtaining Ireland's approval and over her objections.  Under Section 2(k) of the Ambassador Agreement, Ireland's announced intention to no longer perform under the Ambassador Agreement constituted a deemed breach of the Agreement.

32.    Plaintiff is informed and believes, and thereon alleges, that Ireland's purported termination of the Ambassador Agreement was pretextual and was intended to conceal, and did conceal, her material breach of Section 3(a) the Ambassador Agreement, pursuant to which Ireland had agreed that, without Plaintiff's written consent, she would not "engage in or be involved with endorsing, sponsoring, promoting, manufacturing, advertising, marketing or distributing any Competing Products."

33.    Plaintiff is informed and believes, and thereon alleges, that before October 1, 2014, Ireland had been engaged and involved in negotiations with Defendants NuGene, MA Kharazmi, and MS Kharazmi for the purpose of endorsing, sponsoring, promoting, advertising, marketing, and distributing NuGene's stem-cell based skin care products that were competitive with Plaintiff's Products.

34.    On or about November 4, 2014, Defendants Kathy Ireland Worldwide and NuGene entered into that certain License Agreement (the "NuGene License Agreement") dated November 4, 2014, pursuant to which Kathy Ireland Worldwide agreed to make Ireland available to NuGene for the purpose of providing to NuGene and its competing products the same types of ambassador services that Ireland had agreed to render to Plaintiff and its Products under the Ambassador Agreement.  A true and correct copy of the NuGene License Agreement is attached hereto as Exhibit E and is incorporated herein by this reference.

/ / / /

35.    Plaintiff is informed and believes, and thereon alleges, that Ireland breached the Ambassador Agreement in order to enter to the NuGene License Agreement because the NuGene License Agreement was more lucrative for her.  For example, Plaintiff paid Ireland an up-front of $100,000, whereas NuGene agreed to pay, and paid, Ireland an up-front fee of $350,000.  NuGene also agreed to pay Ireland a royalty equal to five percent (5%) of the net sales of NuGene products, with guaranteed minimum royalty payments of $100,000 in Year 1, $150,000 in Year 2, $200,000 in Year 3, and $250,000 in Year 4.

36.    Plaintiff did not learn that Ireland had entered into the NuGene License Agreement until on or about February 3, 2015.

37.    On or about March 5, 2015, Plaintiff learned that NuGene had posted a number of audiovisual presentations on its website at www.nugene.com/media ("NuGene Videos").

38.    Plaintiff's claims against Ireland for her breach of the Ambassador Agreement are the subject matter of that certain arbitration pending before the American Arbitration Association entitled *kathy ireland, Inc. v. Stemage Skin Care, LLC,* AAA Case No. 01-15-0002-7331, including certain related counterclaims.

<u>Ireland's License Agreement with NuGene</u>

39.    Plaintiff is informed and believes, and thereon alleges, that Defendant NuGene is a California corporation formed on or about December 5, 2006.

40.    Plaintiff is informed and believes, and thereon alleges, that on or about March 29, 2011, NuGene obtained registration with the United States Patent and Trademark Office of the trademark "NuGene" in International Class 003 consisting of, among other things, anti-aging moisturizer, eye contour cream, non-medicated anti-aging serum, skin lotion, and hydrating sunscreen cream."  A true and correct copy of the trademark registration obtained online from the United States Patent and Trademark Office's website is attached hereto as <u>Exhibit F</u> and is incorporated herein by this reference.

COMPLAINT

41.     On or about November 4, 2014, NuGene entered into the NuGene License Agreement with Kathy Ireland Worldwide and Ireland.

42.     Plaintiff is informed and believes, and thereon alleges, that on or about December 29, 2014, NuGene merged with an entity known as NG Acquisition Inc., a wholly owned subsidiary of Bling Marketing, Inc., a publicly traded Nevada corporation, and that as a result of the merger, Defendant NuGene, Inc. became a wholly owned subsidiary of Bling Marketing, Inc.

43.     Plaintiff is informed and believes, and thereon alleges, that on or about January 15, 2015, Bling Marketing, Inc. changed its name to NuGene International, Inc.

44.     Plaintiff is informed and believes, and thereon alleges, that in an article in *License! Global Magazine* dated on or about March 25, 2015, NuGene, Kathy Ireland Worldwide, and Ireland announced a campaign to "re-launch" skin care products, stating that "[t]he campaign will include a re-branded Internet presence and new videos featuring Ireland."  A true and correct copy of the article is attached hereto as Exhibit G and is incorporated herein by this reference.

## FIRST CAUSE OF ACTION

### (Copyright Infringement Against NuGene International, NuGene, MA Kharazmi, and MS Kharazmi)

45.     Plaintiff repeats and realleges each of the allegations contained in all of the preceding paragraphs 1 through 44, inclusive, as if fully set forth at length herein.

46.     The principal obligation undertaken by Ireland in the Ambassador Agreement was to provide the services of hosting one or more half-hour television direct response programs demonstrating, promoting and selling Plaintiff's Products. Section 2(a) of the Ambassador Agreement provides in relevant part:

> As part of the "Ambassador Services," [Ireland] shall make the
> Ambassador available as an on-camera and voice-over performer,
> sufficient to provide material for the Show as Company shall

1    reasonably require and as the Ambassador's personal schedule

2    permits, provided that the Ambassador uses reasonable efforts to

3    make herself available.

4        47.    In Section 2(j) of the Ambassador Agreement, Ireland assigned all right,

5    title and interest in the "result and proceeds" of the agreement, including copyright

6    ownership.  Section 2(j) provides:

7        **Ownership of Results and Proceeds.**  Except as otherwise set out in

8        this Agreement, the Company shall be entitled to, and shall own,

9        solely and exclusively, all of the result and proceeds thereof as a

10       work-for-hire, and all rights of every kind therein in perpetuity

11       throughout the universe, including the copyright in the Show.

12       However, Company hereby grants Lender a non-royalty license in

13       perpetuity to use any excerpts from the Show solely for Lender's own

14       promotional and marketing purposes.  Except as set out in this

15       Agreement, Lender and the Ambassador hereby assign and transfer to

16       the Company all right, title and interest in such results and proceeds

17       without reservation, condition, or limitation, and shall execute

18       separate assignments upon requests. This Section 2(j) shall survive

19       expiration or termination of this Agreement.

20       48.    Pursuant to Section 2 of Ambassador Agreement, the parties produced a

21   number of audio-visual presentations (the "Stemage Videos") consisting entirely of

22   original authorship.

23       49.    On June 29, 2015, Plaintiff obtained from the U.S. Copyright Office

24   registration of copyright in the audio-visual presentation illustrated at

25   https://vimeo.com/131539020 (hereinafter "Plaintiff's copyrighted work").  A copy

26   of the registration as it appears on U.S. Copyright Office's website, U.S. Copyright

27   Registration # PA0001947991, is attached hereto as Exhibit H and incorporated

28   herein by this reference.  Pursuant to Section 2(f) of the Ambassador Agreement,

Plaintiff owns all right, title and interest to this copyright.

50.   On or about March 5, 2015, Plaintiff learned that Defendant NuGene had posted an audiovisual presentation on its website at www.nugene.com/media bearing substantial similarity to Plaintiff's copyrighted work.  That presentation, entitled "Kathy Ireland – Talks with Tommy Mehare & Selina Lopez about the NuGene Difference," is available for inspection at www.youtube.com/watch?v=V2qaJi30Vew,  A side-by-side comparison between Plaintiff's copyrighted work and Defendant NuGene's audiovisual presentation is illustrated at https://vimeo.com/121710827.

51.   Plaintiff is informed and believes, and alleges thereon, that NuGene International, NuGene, MA Kharazmi, and MS Kharazmi (collectively, "NuGene Copyright Infringers"), and each of them, copied Plaintiff's copyrighted work in violation of Plaintiff's exclusive rights under  Section 106 of the United States Copyright Law, 17 U.S.C. § 106.  After contracting with Plaintiff and accepting payment from Plaintiff to produce a creative work of authorship, and after assigning all right, title and interest in that work of authorship, for which she was paid in full, Defendant Ireland accepted payment by Defendant  NuGene, a direct competitor of Plaintiff, for a substantially similar work of authorship within the meaning of the U.S. Copyright Law, thereby infringing Plaintiff's exclusive rights in a combination of creative elements, including similarities to Plaintiff's script, similarities in the number, identity and appearance of the actors, similarities in the format and length of Plaintiff's copyrighted work, and the total "look and feel" of Plaintiff's copyrighted authorship.  By its acts alleged above, the NuGene Copyright Infringers have willfully, intentionally, with willful blindness to and in reckless disregard of Plaintiff's rights, infringed Plaintiff's exclusive rights in its copyrighted work.

52.   As a result of their wrongful conduct, the NuGene Copyright Infringers, jointly and severally, are liable to Plaintiff for copyright infringement pursuant to Section 501 of the United States Copyright Law, 17 U.S.C. § 501.

53.    Plaintiff has suffered damages as a proximate result of the copyright infringement by the NuGene Copyright Infringers, and, pursuant to Section 504 of the United States Copyright Law, is entitled to recover such damages, including any and all profits that each of the NuGene Copyright Infringers has earned as a result of its wrongful conduct.

54.    Plaintiff is also entitled to injunctive relief against the NuGene Copyright Infringers pursuant to Section 502 of the United States Copyright Law, 17 U.S.C. § 502, and to an order impounding any and all infringing materials pursuant to 17 U.S.C. § 503.

55.    Plaintiff has no adequate remedy at law for the NuGene Copyright Infringers' wrongful conduct because (i) Plaintiff's copyrights are unique and valuable property which has no readily determinable market value; (ii) the NuGene Copyright Infringers' infringement harms Plaintiff such that Plaintiff could not be made whole by any monetary award; and (iii) the NuGene Copyright Infringers' wrongful conduct, and the resulting damage to Plaintiff, is continuing.

## SECOND CAUSE OF ACTION

### (Intentional Interference with Contract Against NuGene, MA Kharazmi, and MS Kharazmi)

56.    Plaintiff repeats and realleges each of the allegations contained in all of the preceding paragraphs 1 through 55, inclusive, as if fully set forth at length herein.

57.    At all times relevant hereto, the Ambassador Agreement between Ireland and Plaintiff was valid and in full force and effect.

58.    Plaintiff is informed and believes, and thereon alleges, that at all times relevant hereto, NuGene, MA Kharazmi, and MS Kharazmi (collectively, the "NuGene Defendants") knew of the Ambassador Agreement and knew that the Ambassador Agreement was valid and in full force and effect.

59.    Plaintiff is informed and believes, and thereon alleges, that at all times relevant hereto and before entering into the NuGene License Agreement, the NuGene

COMPLAINT

Defendants knew that commencing in 2013 through and including 2014, Ireland had endorsed, and was rendered ambassador services to, Plaintiff and its Products.

60.    Plaintiff is informed and believes, and thereon alleges, that at all times relevant hereto, the NuGene Defendants knew that the skin care products for which they wanted to retain Ireland's services as an ambassador were directly competitive with Plaintiff's Products.

61.    Plaintiff is informed and believes, and thereon alleges, that at all times relevant hereto, the NuGene Defendants intended to induce, and did induce, Ireland to breach her Ambassador Agreement with Plaintiff and to enter into the NuGene License Agreement.

62.    Ireland did, in fact, breach the Ambassador Agreement by, among other things, knowingly, intentionally, falsely, and fraudulently claiming that Plaintiff had breached the Ambassador Agreement when, in fact, Ireland knew that Plaintiff had performed all of its obligations under the Ambassador Agreement.

63.    Plaintiff is informed and believes, and thereon alleges, that the NuGene Defendants' unjustified conduct was a moving and procuring cause for Ireland's breach of the Ambassador Agreement.

64.    As a direct and proximate cause of the NuGene Defendants' intentional inference with Plaintiff's Ambassador Agreement with Ireland, Plaintiff has been damaged in an amount according to proof.

65.    In doing the acts herein alleged, the NuGene Defendants  acted willfully and with the intent to cause injury to Plaintiff.  Each of the NuGene Defendants is therefore guilty of malice and/or oppression and/or fraud in conscious disregard of Plaintiff's rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish each of the NuGene Defendants and to deter others from engaging in similar misconduct.

/ / / /

/ / / /

COMPLAINT

## THIRD CAUSE OF ACTION

### (Intentional Interference with Prospective Economic Advantage Against NuGene, MA Kharazmi, and MS Kharazmi)

66.     Plaintiff repeats and realleges each of the allegations contained in all of the preceding paragraphs 1 through 65, inclusive, as if fully set forth at length herein.

67.     At all relevant times, the NuGene Defendants knew of, among other things, Plaintiff's Ambassador Agreement with Ireland, Plaintiff's use of and reliance on Ireland in the promotion, marketing, and sales of Plaintiff's Products to its customers, and Plaintiff's use of and reliance on Ireland in connection with Plaintiff's relationships with its suppliers and vendors.

68.     Despite knowing of the Ambassador Agreement and Plaintiff's existing marketing, promotional, and sales activities involving, and business relationships with, its customers, suppliers, and vendors, the NuGene Defendants intentionally interfered with those activities and business relationships by inducing Ireland to breach the Ambassador Agreement.

69.     As a direct result of the NuGene Defendants' actions and omissions, Plaintiff was damaged in an amount according to proof due to sudden loss of Ireland as an ambassador, spokesperson, and promoter of Plaintiff's Products after Plaintiff had invested in substantial amounts of time and resources in developing marketing, promotional, and sales campaigns featuring Ireland and in building a distribution network for its Products.

70.     In doing the acts herein alleged, the NuGene Defendants acted willfully and with the intent to cause injury to Plaintiff.  Each of the NuGene Defendants is therefore guilty of malice and/or oppression and/or fraud in conscious disregard of Plaintiff's rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish each of the NuGene Defendants and to deter others from engaging in similar misconduct.

/ / / /

COMPLAINT

## FOURTH CAUSE OF ACTION

### (Negligent Interference with Prospective Economic Advantage Against NuGene, MA Kharazmi, and MS Kharazmi)

71. Plaintiff repeats and realleges each of the allegations contained in all of the preceding paragraphs 1 through 70, inclusive, as if fully set forth at length herein.

72. At all relevant times, the NuGene Defendants knew or should have known of, among other things, Plaintiff's Ambassador Agreement with Ireland, Plaintiff's use of and reliance on Ireland in the promotion, marketing, and sales of Plaintiff's Products to its customers, and Plaintiff's use of and reliance on Ireland in connection with Plaintiff's relationships with its suppliers and vendors.

73. The NuGene Defendants knew, or should have known, that in inducing Ireland to breach her Ambassador Agreement with Plaintiff, the NuGene Defendants was negligently interfering with Plaintiff's existing marketing, promotional, and sales activities involving, and business relationships with, its customers, suppliers, and vendors.

74. As a direct result of the NuGene Defendants' actions and omissions, Plaintiff was damaged in an amount according to proof due to sudden loss of Ireland as an ambassador, spokesperson, and promoter of Plaintiff's Products after Plaintiff had invested in substantial amounts of time and resources in developing marketing, promotional, and sales campaigns featuring Ireland and in building a distribution network for its Products.

## FIFTH CAUSE OF ACTION

### (Intentional Interference with Contract Against Kathy Ireland Worldwide, Roseberry, Rosenblum, and Sterling)

75. Plaintiff repeats and realleges each of the allegations contained in all of the preceding paragraphs 1 through 74, inclusive, as if fully set forth at length herein.

76. At all times relevant hereto, the Ambassador Agreement between Ireland and Plaintiff was valid and in full force and effect.

- 17 -
COMPLAINT

77.   Defendant Kathy Ireland Worldwide was not a party to the Ambassador Agreement.

78.   At all times relevant hereto, Defendants Kathy Ireland Worldwide, Roseberry, Rosenblum, and Sterling (collectively, the "Worldwide Defendants") knew of the Ambassador Agreement and knew that the Ambassador Agreement was valid and in full force and effect.

79.   At all times relevant hereto and before entering into the NuGene License Agreement, the Worldwide Defendants knew that commencing in 2013 through and including 2014, Ireland had endorsed, and was rendered ambassador services to, Plaintiff and its Products.

80.   At all times relevant hereto, the Worldwide Defendants knew that the skin care products for which NuGene wanted to retain Ireland's services as an ambassador were directly competitive with Plaintiff's Products.

81.   At all times relevant hereto, the Worldwide Defendants intended to induce, and did induce, Ireland to breach her Ambassador Agreement with Plaintiff and to enter into the NuGene License Agreement.

82.   Ireland did, in fact, breach the Ambassador Agreement by, among other things, knowingly, intentionally, falsely, and fraudulently claiming that Plaintiff had breached the Ambassador Agreement when, in fact, Ireland knew that Plaintiff had performed all of its obligations under the Ambassador Agreement.

83.   Plaintiff is informed and believes, and thereon alleges, that the Worldwide Defendants' unjustified and unjustifiable conduct was a moving and procuring cause for Ireland's breach of the Ambassador Agreement.

84.   As a direct and proximate cause of the Worldwide Defendants' intentional inference with Plaintiff's Ambassador Agreement with Ireland, Plaintiff has been damaged in an amount according to proof.

85.   In doing the acts herein alleged, the Worldwide Defendants acted willfully and with the intent to cause injury to Plaintiff.  Each of the Worldwide

Defendants is therefore guilty of malice and/or oppression and/or fraud in conscious disregard of Plaintiff's rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish the Worldwide Defendants, and each of them, and to deter others from engaging in similar misconduct.

## SIXTH CAUSE OF ACTION

**(Intentional Interference with Prospective Economic Advantage Against Kathy Ireland Worldwide, Roseberry, Rosenblum, and Sterling)**

86.   Plaintiff repeats and realleges each of the allegations contained in all of the preceding paragraphs 1 through 85, inclusive, as if fully set forth at length herein.

87.   At all relevant times, Kathy Ireland Worldwide knew of, among other things, Plaintiff's Ambassador Agreement with Ireland, Plaintiff's use of and reliance on Ireland in the promotion, marketing, and sales of Plaintiff's Products to its customers, and Plaintiff's use of and reliance on Ireland in connection with Plaintiff's relationships with its suppliers and vendors.

88.   Despite knowing of the Ambassador Agreement and Plaintiff's existing marketing, promotional, and sales activities involving, and business relationships with, its customers, suppliers, and vendors, the Worldwide Defendants intentionally interfered with those activities and business relationships by inducing Ireland to breach the Ambassador Agreement.

89.   As a direct result of the Worldwide Defendants' actions and omissions, Plaintiff was damaged in an amount according to proof due to sudden loss of Ireland as an ambassador, spokesperson, and promoter of Plaintiff's Products after Plaintiff had invested in substantial amounts of time and resources in developing marketing, promotional, and sales campaigns featuring Ireland and in building a distribution network for its Products.

90.   In doing the acts herein alleged, the Worldwide Defendants acted willfully and with the intent to cause injury to Plaintiff.  The Worldwide Defendants is therefore guilty of malice and/or oppression and/or fraud in conscious disregard of

COMPLAINT

Plaintiff's rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish the Worldwide Defendants, and each of them, and to deter others from engaging in similar misconduct.

## SEVENTH CAUSE OF ACTION

### (Negligent Interference with Prospective Economic Advantage Against Kathy Ireland Worldwide)

91.   Plaintiff repeats and realleges each of the allegations contained in all of the preceding paragraphs 1 through 90, inclusive, as if fully set forth at length herein.

92.   At all relevant times, the Worldwide Defendants knew or should have known of, among other things, Plaintiff's Ambassador Agreement with Ireland, Plaintiff's use of and reliance on Ireland in the promotion, marketing, and sales of Plaintiff's Products to its customers, and Plaintiff's use of and reliance on Ireland in connection with Plaintiff's relationships with its suppliers and vendors.

93.   The Worldwide Defendants knew, or should have known, that in inducing Ireland to breach her Ambassador Agreement with Plaintiff, the Worldwide Defendants was negligently interfering with Plaintiff's existing marketing, promotional, and sales activities involving, and business relationships with, its customers, suppliers, and vendors.

94.   As a direct result of the Worldwide Defendants' actions and omissions, Plaintiff was damaged in an amount according to proof due to sudden loss of Ireland as an ambassador, spokesperson, and promoter of Plaintiff's Products after Plaintiff had invested in substantial amounts of time and resources in developing marketing, promotional, and sales campaigns featuring Ireland and in building a distribution network for its Products.

## EIGHTH CAUSE OF ACTION

### (Conspiracy Against the NuGene Defendants and the Worldwide Defendants)

95.   Plaintiff repeats and realleges each of the allegations contained in all of the preceding paragraphs 1 through 94, inclusive, as if fully set forth at length herein.

COMPLAINT

96.     Plaintiff is informed and believes, and thereon alleges, that at all times relevant hereto, the NuGene Defendants and the Worldwide Defendants, and each of them, knowingly and willfully conspired and agreed among themselves to interfere with Plaintiff's Ambassador Agreement with Ireland by inducing Ireland to breach the Agreement, as alleged in the Second and Fifth Causes of Action herein.

97.     Plaintiff is informed and believes, and thereon alleges, that at all times relevant hereto, the NuGene Defendants and the Worldwide Defendants, and each of them, knowingly and willfully conspired and agreed among themselves to interfere with Plaintiff's prospective economic advantage by inducing Ireland to breach the Agreement, as alleged in the Third, Fourth, Sixth, and Seventh Causes of Action herein.

98.     The NuGene Defendants and the Worldwide Defendants, and each of them, did the acts and things herein alleged pursuant to, and in furtherance of, the conspiracy and the above-alleged agreement.

99.     Plaintiff is informed and believes and thereon alleges that the last overt act in pursuance of the above-described conspiracy occurred on or after November 4, 2014, on which date NuGene and Kathy Ireland Worldwide entered into the NuGene License Agreement.

100.    As a proximate result of the wrongful acts herein alleged, Plaintiff has been damaged in amount to be proven at the time of trial.

101.   In doing the acts and things herein alleged, the NuGene Defendants and the Worldwide Defendants, and each of them, acted willfully and with the intent to cause injury to Plaintiff.  The NuGene Defendants and the Worldwide Defendants, and each of them, were therefore guilty of malice and/or oppression and/or fraud in conscious disregard of Plaintiff's rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish the NuGene Defendants and the Worldwide Defendants, and each of them, and to deter others from engaging in similar misconduct.

COMPLAINT

## **PRAYER**

**WHEREFORE,** Plaintiff prays for judgment against Defendants NuGene International, NuGene, Inc., Mohammad Ali Kharazmi, Mohammed Saeed Kharazmi, Kathy Ireland Worldwide, Stephen Roseberry, Steve Rosenblum, and Erik Sterling as follows:

A.　　As against Defendants NuGene International, NuGene, Inc., Mohammad Ali Kharazmi, Mohammed Saeed Kharazmi (collectively, the "Copyright Defendants"), jointly and severally,

(1)　　A declaration that:

a.　　The Copyrights Defendants, and each of them, have infringed the federally registered copyright U.S. Copyright Registration # PA0001947991 in violation of 17 U.S.C. § 501; and

b.　　The Copyright Defendants' infringement of Plaintiff's copyrights was intentional, willful and, at a minimum, with willful blindness and reckless disregard of Plaintiff's rights.

(2)　　A preliminary and permanent injunction prohibiting each of the Copyright Defendants and their respective directors, principals, officers, agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with NuGene, from imitating, copying, or making any other infringing use or infringing distribution of Plaintiff's copyrighted videos covered by U.S. Copyright Registration # PA0001947991.

(3)　　An order, pursuant to 17 U.S.C. § 503, impounding all copies of the Copyright Defendants' infringing videos.

(4)　　An award of damages and the Copyright Defendants' profits pursuant to 17 U.S.C. § 504(b).

(B)　　As against Defendants NuGene, Inc., Mohammad Ali Kharazmi, Mohammed Saeed Kharazmi, Kathy Ireland Worldwide, Stephen Roseberry, Steve Rosenblum, and Erik Sterling, jointly and severally, consequential damages in an

- 22 -

COMPLAINT

1   amount according to proof.

2      (C)    As against Defendants NuGene, Inc. Mohammad Ali Kharazmi,

3   Mohammed Saeed Kharazmi, Kathy Ireland Worldwide, Stephen Roseberry, Steve

4   Rosenblum, and Erik Sterling, jointly and severally, punitive damages in an amount

5   according to proof.

6      (D)    For reasonable attorneys' fees according to proof;

7      (E)    For costs of suit herein incurred; and

8      (F)    For such other and further relief as the Court may deem just and proper.

9                    **Trial by Jury**

10      Pursuant to the Seventh amendment to the constitution of the United States of

11   America, Plaintiff is entitled to, and demand, a trial by jury.

13   Dated: July 7, 2015          BUCHANAN INGERSOLL & ROONEY LLP

15                By:  /s/ Robert J. Parks

16                    ROBERT J.PARKS, ESQ.
                      Attorneys for  Plaintiff Stemage Skin Care,
                      LLC

- 23 -

COMPLAINT